THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MARGARET and STEPHEN JEFFERIES, | ) ) | CIVIL NO. 09-00156 JMS/KSC |
| | ) | ORDER GRANTING IN PART AND |
| Plaintiffs, | ) | DENYING IN PART DEFENDANTS' |
| | ) | MOTION FOR SUMMARY |
| vs. | ) | JUDGMENT |
| | ) | |
| LEA ALBERT, CASTLE COMPLEX | ) | |
| AREA SUPERINTENDENT; ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I.  INTRODUCTION

On April 7, 2009, Plaintiffs Margaret and Stephen Jefferies

(collectively "Plaintiffs") filed a Complaint against Castle Complex Area

Superintendent Lea Albert ("Albert"), Special Education Resource Teacher

Rebecca Rosenberg ("Rosenberg"), District Educational Specialist Beverly Reidy

("Reidy") (collectively "Individual Defendants"), and the State of Hawaii

Department of Education ("DOE") (collectively "Defendants"), seeking redress for

various incidents surrounding the education of Plaintiffs' special needs minor

daughter, Angela Jefferies ("A.J."), who is now deceased.  Specifically, Plaintiffs

allege claims under the Individuals with Disabilities Education Act ("IDEA"), the

Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act ("Rehabilitation Act"), and 42 U.S.C. § 1983.

Currently before the court is Defendants' Motion for Summary Judgment, in which they argue that they are entitled to summary judgment on all of Plaintiffs' claims for various reasons. Based on the following, the court GRANTS in part and DENIES in part Defendants' Motion for Summary Judgment.

## II. <u>BACKGROUND</u>

**A. Factual Background**

Plaintiffs are the parents of A.J., who was born on June 8, 1992 and diagnosed with Wolf-Hirschorn syndrome (4p-chromosomal deletion) in her second year. Jefferies Decl. ¶ 1; Rosenberg Decl. ¶ 6. A.J. was also diagnosed with cortical vision impairment, mild hearing impairment, and autism. Jefferies Decl. ¶ 2. In 1995, A.J. was deemed eligible for special education services under the category of multiple disability, and she subsequently began receiving special education services pursuant to the IDEA. *See* Rosenberg Decl. ¶ 9.

Throughout A.J's education, Plaintiffs have raised concerns that home placement was the most appropriate educational setting for A.J. given her disabilities. *See, e.g.*, Jefferies Decl. ¶¶ 19, 24, 27-28. For the most part, however,

A.J. was placed in Hawaii public schools and residential schools on the mainland.[1]
*See, e.g.*, *id.* ¶¶ 25, 28.

Most recently, A.J. attended Heartspring, located in Wichita, Kansas, from June 2004 until her death on May 3, 2007. *Id.* ¶ 36. Plaintiffs assert that Heartspring did not meet A.J.'s individualized education program ("IEP") because: (1) it failed to provide A.J. with staff who were available for one-on-one services or sufficiently trained; (2) it did not provide therapeutical and other services included in A.J.'s IEP; and (3) her education was inadequate. *Id.* ¶¶ 37-39. Plaintiffs further assert that Heartspring did not consistently provide A.J. with adequate basic care, citing a period of time that she had a broken thermostat in her room. *Id.* ¶ 39. Due to these and other perceived deficiencies, Plaintiffs repeatedly sought home placement during A.J.'s stay at Heartspring. *Id.* ¶¶ 40, 43-47; Pls.' Ex. I.

Defendants rejected these requests on the basis that the care received was satisfactory and their assertion that home placement would be too restrictive for A.J. *See* Defs.' Ex. B; Rosenberg Decl. ¶¶ 21-22, 27. During IEP meetings held on October 10, 2006, December 21, 2006, and April 9, 2007, Defendants

---

[1] While both parties provide abundant information regarding A.J.'s entire educational history, the court focuses on only those facts that are relevant to Plaintiffs' claims in this action.

determined that A.J. should remain at Heartspring.  Jefferies Decl. ¶¶ 44, 47; Defs.'
Ex. B.

In the winter of 2006-2007, Heartspring staff monitored A.J.'s health
more closely than usual and performed weekly weigh-ins.  Albert Decl. ¶ 6.
During this time, Albert was in daily and/or weekly communication with
Heartspring regarding A.J.'s health.  *Id.* ¶ 8.  In February 2007, Margaret Jefferies
met with Reidy and told her that "it was a serious matter for A.J. to come back
home [to Hawaii] immediately due to health reasons [] without any further delay."
Jefferies Decl. ¶ 48.  Plaintiffs later sent Albert a letter, dated March 20, 2007,
warning Defendants that A.J. has been "very sick since December 2006" and that
"[b]ecause she is very sick and continues to be very sick, [Plaintiffs] are worried
that something could happen to her."  First Am. Compl. Ex. 3.  Albert and
Rosenberg forwarded the concern to Heartspring on March 30, 2007.  *Id.* Ex. 4.  In
response, Heartspring advised Defendants, in a letter dated April 4, 2007, that A.J.
was "doing well," although there were concerns over her weight.  Defs.' Mot.
Ex. F; *see also* First Am. Compl. Ex. 4.

During the April 9, 2007 IEP meeting, Plaintiffs "particularly alerted
the Defendants of the urgent need due to A.J.'s health and medical concerns that
her placement should be at [Plaintiffs'] home without any further delay."  Jefferies

Decl. ¶ 51.  At this meeting, Plaintiffs also provided Defendants with a February 25, 2007 letter from Dr. Bob Anderson, A.J.'s pediatrician, in which he agreed with Plaintiffs that A.J. was a "medically fragile child with numerous medical conditions and a decreased life expectancy associated with her chromosomal abnormality."  First Am. Compl. Ex. ¶ 2.  The letter further states that "[i]t is likely that [A.J.] would develop less intercurrent illnesses if she were home . . . ."  *Id.*  Defendants denied Plaintiffs' request for home placement and A.J. remained at Heartspring.  First Am. Compl. Ex. 1.

"[A]round April 24, 2007," Heartspring notified Albert that it was taking "precautionary measures with antibiotics but that A.J. was stable and fine."[2]  Albert Decl. ¶ 9.  A.J. was nonetheless admitted to Wesley Medical Center on April 24, 2007.  Jefferies Decl. ¶ 57.  Defendants state that A.J. was diagnosed with Maple Syrup Urine Disease in early May and died on May 3, 2007.  Albert Decl. ¶¶ 10, 12.

## B.    Procedural Background

Plaintiffs filed their Complaint on April 7, 2009 and a First Amended Complaint on April 9, 2009.  The First Amended Complaint, while not entirely

---

[2]  Neither party explains or presents evidence regarding the extent of Plaintiffs' or Defendants' knowledge of A.J.'s health condition between April 24, 2007 and May 3, 2007.

clear, alleges claims under the IDEA, the ADA, Rehabilitation Act, and 42 U.S.C.
§ 1983.[3]

On August 3, 2009, Defendants filed this Motion for Summary
Judgment.  On October 1, 2009, Plaintiffs filed an Opposition, and Defendants
filed a Reply on October 29, 2009.  A hearing was held on November 9, 2009.  On
November 13, 2009, Plaintiffs submitted supplemental briefing per the court's
request.

## III.  STANDARD OF REVIEW

Summary judgment is proper where there is no genuine issue of
material fact and the moving party is entitled to judgment as a matter of law.  Fed.
R. Civ. P. 56(c).  Rule 56(c) mandates summary judgment "against a party who
fails to make a showing sufficient to establish the existence of an element essential
to the party's case, and on which that party will bear the burden of proof at trial."
*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of
Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of
informing the court of the basis for its motion and of identifying those portions of

---

[3]  At the November 9, 2009 hearing, Plaintiffs confirmed that these are the only claims
they assert against Defendants.

the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [and] come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citation and internal quotations omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

    An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. An issue is material if the resolution of the factual dispute affects the outcome of the claim or defense under substantive law governing the case. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

# IV.  DISCUSSION

Defendants argue that the court should grant summary judgment on all of Plaintiffs' claims for various reasons.  The court addresses each of Defendants' arguments in turn.

## A.    The IDEA

Defendants argue, among other things, that Plaintiffs' IDEA claim fails because they cannot be afforded any remedy under that statute.[4]

The IDEA provides a party with the opportunity to present a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child."  20 U.S.C. § 1415(b)(6)(A).  The Supreme Court explains that:

> By presenting a complaint a party is able to pursue a
> process of review that, as relevant, begins with a
> preliminary meeting "where the parents of the child
> discuss their complaint" and the local educational agency
> "is provided the opportunity to [reach a resolution]."
> § 1415(f)(1)(B)(i)(IV).  If the agency "has not resolved
> the complaint to the satisfaction of the parents within 30
> days," § 1415(f)(1)(B)(ii), the parents may request an
> "impartial due process hearing," § 1415(f)(1)(A), which
> must be conducted either by the local educational agency

---

[4]  The court raised this issue initially at the hearing.  In response, Plaintiffs argued that they are entitled to damages on their IDEA claim pursuant to 42 U.S.C. § 1983.  As explained below, § 1983 affords Plaintiffs no relief.

> or by the state educational agency, *ibid.*, and where a
> hearing officer will resolve issues raised in the complaint,
> § 1415(f)(3).

*Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 525 (2007).

If a party disagrees with a hearings officer's determination, the IDEA allows that

party to bring a civil action.  20 U.S.C. § 1415(i)(2)(A).

Although the IDEA allows the court to grant "such relief as the court

determines is appropriate," 20 U.S.C. § 1415(i)(2)(B)(iii), monetary damages, as

opposed to reimbursement for expenses, are not ordinarily available.  *Witte v.*

*Clark County Sch. Dist.*, 197 F.3d 1271, 1275 (9th Cir. 1999); *Mtn. View-Los Altos*

*Union High Sch. Dist. v. Sharron B.H.*, 709 F.2d 28, 30 (9th Cir. 1983); *accord*

*Ortega v. Bibb County Sch. Dist.*, 397 F.3d 1321, 1325 (11th Cir. 2005); *Sellers v.*

*Sch. Bd. of the City of Manassas Va.*, 141 F.3d 524, 527 (4th Cir. 1998); *see also*

*Polera v. Bd. of Educ.*, 288 F.3d 478, 486 (2d Cir. 2002) ("The purpose of the

IDEA is to provide educational services, not compensation for personal injury, and

a damages remedy -- as contrasted with reimbursement of expenses -- is

fundamentally inconsistent with this goal.").  Further, equitable relief is generally

"oriented . . . to providing prospective educational benefits," as opposed to

redressing non-educational injuries.  *Padilla ex rel. Padilla v. Sch. Dist. No. 1 in*

*the City & County of Denver, Colo.*, 233 F.3d 1268, 1274 (10th Cir. 2000); *see*

9

*M.Y. ex rel. J.Y. v. Special Sch. Dist. No. 1*, 544 F.3d 885, 888 (8th Cir. 2008).

Plaintiffs seek damages and injunctive relief to redress harms that A.J. allegedly incurred as a result of her retention and treatment at Heartspring. Specifically, Plaintiffs seek monetary damages in the form of a foundation in A.J.'s name and injunctive relief in the form of the State's discharge of Albert and Rosenberg.  First Am. Compl. 8.  Such relief is not available under the IDEA.  *P.R. v. Cent. Tx. Autism Ctr.*, 2009 WL 1393291, at *5 (W.D. Tx. May 15, 2009); *Reuther v. Shiloh Sch. Dist. No. 85*, 2008 WL 191195, at *3 (S.D. Ill. Jan. 18, 2008); *Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 124 (1st Cir. 2003).

In sum, because Plaintiffs are not claiming simply that A.J. was denied a free appropriate public education and because the remedies that Plaintiffs seek cannot and would not now secure a free appropriate public education for A.J., Plaintiffs' IDEA claim fails.  Accordingly, the court GRANTS Defendants' Motion for Summary Judgment on Plaintiffs' IDEA claim.

## B.    The ADA and Rehabilitation Act

Plaintiffs bring claims under the ADA and Rehabilitation Act for discrimination and retaliation.  Defendants argue that summary judgment should be granted on these claims because: (1) the statute of limitations applies to any claim that accrued prior to April 7, 2007; and (2) there is no genuine issue of material

fact supporting these claims.  The court addresses each argument.

>  **1.    *Statute of Limitations***

Defendants argue that Plaintiffs' claims are subject to a two-year statute of limitations such that many of the allegations in the First Amended Complaint -- i.e., all of those that accrued prior to April 7, 2007 -- are barred.

Neither the ADA nor the Rehabilitation Act specifies a statute of limitations.  *See Patricia N. v. Lemahieu*, 141 F. Supp. 2d 1243, 1250-51 (D. Haw. 2001).  Courts therefore apply analogous state law to determine the proper limitations period.  *See, e.g.*, *id.* at 1251.  In Hawaii, the analogous statute of limitations, relating to personal injury suits, provides that actions must be instituted "within two years after the cause of action accrued."  Hawaii Revised Statutes ("HRS") § 657-7 (stating the limitations period for personal injury actions); *see also Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1137 n.2 (9th Cir. 2002) (applying California's personal injury statute of limitations to an ADA claim).

Plaintiffs filed their Complaint on April 7, 2009.  Therefore, the statute of limitations bars any of their ADA and Rehabilitation Act claims that accrued prior to April 7, 2007.  These barred claims include, for example, Plaintiffs' allegations that Defendants improperly: (1) placed A.J. at Hope School;

(2) placed A.J. at a Hawaii public school; (3) placed A.J. at Heartspring;

(4) arranged for A.J.'s mother to have limited visitation rights at Heartspring; and

(5) misreported A.J.'s educational progress at Heartspring.  Plaintiffs' remaining

allegations based on events occurring after April 7, 2007 are not time-barred and

include Defendants' alleged refusal to return A.J. to Hawaii after April 7, 2007

despite their knowledge and/or notice that A.J.'s health was deteriorating and that

A.J. should be placed at home.

### 2.    *Merits of the ADA and Rehabilitation Act Claims*

Defendants argue that there is no genuine issue of material fact

supporting Plaintiffs' claims of discrimination and retaliation under the ADA and

Rehabilitation Act.  Defs.' Mot. 13-16.  Based on the following, the court finds that

Plaintiffs cannot bring ADA and Rehabilitation Act claims against the Individual

Defendants as a matter of law, but that genuine issues of material fact preclude

summary judgment on these claims as to the DOE.

### a.    *Proper Defendants*

The Rehabilitation Act provides that "[n]o otherwise qualified

individual with a disability in the United States . . . shall, solely by reason of his or

her disability, be excluded from the participation in, be denied the benefits of, or be

subjected to discrimination under any program or activity receiving Federal

12

financial assistance . . . ."  29 U.S.C. § 794(a).  The ADA similarly provides that

"no qualified individual with a disability shall, by reason of such disability, be

excluded from participation in or be denied the benefits of the services, programs,

or activities of a public entity, or be subjected to discrimination by any such

entity."  42 U.S.C. § 12132.

      Because the Rehabilitation Act refers to "program or activity" and the

ADA refers to "services, programs, or activities of a public entity," "[t]he majority

of courts . . . have held that neither the Rehabilitation Act nor the ADA permits

claims against persons in their individual capacities."[5]  *See Smith v. Me. Sch.*

*Admin. Dist. No. 6*, 2001 WL 68305, at *3 (D. Me. Jan. 29, 2001) (citing *Silk v.*

*City of Chicago*, 194 F.3d 788, 797 n.5 (7th Cir. 1999) (applying rule to both the

ADA and the Rehabilitation Act); *Alsbrook v. City of Maumelle*, 184 F.3d 999,

1005 n.8 (8th Cir. 1999) (applying the rule to the ADA); *Hiler v. Brown*, 177 F.3d

542, 546-47 (6th Cir. 1999) (applying the rule to the Rehabilitation Act)) (other

citations omitted); *see also Grzan v. Charter Hosp. of Nw. Ind.*, 104 F.3d 116, 120

(7th Cir. 1997) ("Employees of the recipients of federal financial assistance are not

in themselves the recipients of such assistance.").  The court agrees with this

---

[5]  The court raised this issue initially at the hearing.  In response, Plaintiffs argued that the ADA and Rehabilitation Act claims are proper against Individual Defendants pursuant to 42 U.S.C. § 1983.  As explained below, § 1983 affords Plaintiffs no relief.

conclusion and therefore GRANTS Individual Defendants' Motion for Summary

Judgment as to Plaintiffs' ADA and Rehabilitation Act claims.

        *b.*    *Discrimination claim against the DOE*

        The elements of an ADA discrimination claim and a Rehabilitation

Act discrimination claim are the same.  *Coons v. Sec'y of U.S. Dep't of Treasury*,

383 F.3d 879, 884 (9th Cir. 2004).  To prevail on the ADA and Rehabilitation Act

discrimination claims, Plaintiffs must show: (1) A.J. was "disabled"; (2) A.J. was

qualified for the benefits sought; (3) A.J. was denied the benefit solely because of

her disability; and (4) the benefit she sought was from a program that receives

federal financial assistance.  *See Smith v. Barton*, 914 F.2d 1330, 1338 (9th Cir.

1990).

        A party seeking to recover damages under the ADA or the

Rehabilitation Act must show "something more" than a denial of a free appropriate

public education under the IDEA.  *Sellers v. Sch. Bd. of City of Mannassas*, 141

F.3d 524, 529 (9th Cir. 1998) (citations omitted); *accord Brenneise v. San Diego

Unified Sch. Dist.*, 2008 WL 4853329, at *11 (S.D. Cal. Nov. 7, 2008).  Similarly,

"a public entity can be liable for damages under [the Rehabilitation Act] if it

intentionally or with deliberate indifference fails to provide meaningful access or

reasonable accommodation to disabled persons."  *Mark H. v. Lemahieu*, 513 F.3d

14

922, 938 (9th Cir. 2008); *see Duvall v. County of Kitsap*, 260 F.3d 1124, 1139 (9th

Cir. 2001) (stating that deliberate indifference is "knowledge that a harm to a

federally protected right is substantially likely, and a failure to act upon that

likelihood").

      The DOE argues that summary judgment should be granted on

Plaintiffs' discrimination claim because Plaintiffs have failed to show that A.J. was

denied a benefit due to her disability.  Defs.' Mot. 14.  The court disagrees.  Read

liberally, the First Amended Complaint alleges that the DOE refused to make

reasonable accommodations for A.J.'s disabilities by providing her home

instruction necessitated by her health.  *See Weixel v. Bd. of Educ.*, 287 F.3d 138,

148 (2d Cir. 2002) (stating that allegation that defendant refused to provide home

school instruction necessitated by the pupil's health stated a denial of a benefit

under the ADA).  Viewed in the light most favorable to Plaintiffs, the evidence

suggests that the DOE was aware of A.J.'s health problems necessitating her return

to Hawaii, but the DOE refused this placement.  First Am. Compl. Exs. 2, 3;

Jefferies Decl. ¶¶ 48, 51; Albert Decl. ¶¶ 6, 8; Defs.' Mot. Ex. F.  Accordingly, the

court DENIES the DOE's Motion for Summary Judgment on Plaintiffs'

discrimination claim against the DOE.

> c.    *Retaliation claim against the DOE*

To prevail on a retaliation claim under either the ADA or the

Rehabilitation Act, Plaintiffs must show: (1) involvement in a protected activity;

(2) an adverse action; and (3) a causal link between the two.  *Pardi v. Kaiser*

*Found. Hosp.*, 389 F.3d 840, 849 (9th Cir. 2004) (stating the elements of retaliation

under the ADA); *Coons*, 383 F.3d at 887 (stating the elements of retaliation under

the Rehabilitation Act).

In a single paragraph, the DOE argues that there is no genuine issue of

material fact that the DOE retaliated against Plaintiffs.  Defs.' Mot. 15-16.  Given

the DOE's sparse argument, the court cannot discern the basis of the DOE's

argument and the court finds that the DOE has not carried its initial burden to

"inform[] the court of the basis for its motion and [identify] those portions of the

pleadings and discovery responses that demonstrate the absence of a genuine issue

of material fact."  *Soremekun*, 509 F.3d at 984 (citation omitted).  Further, to the

extent that the DOE argues that Plaintiffs "fail to plead any adverse action," Defs.'

Mot. 16, the court disagrees.  As described above, Plaintiffs have put forth

evidence that the DOE did not allow A.J. to return home despite Plaintiffs'

requests and despite knowledge and/or notice of the risk to A.J.'s health.  *See, e.g.*,

Jefferies Decl. ¶¶ 44-51; Compl. Exs. 1, 2, 3, 4, 5(c).  Accordingly, the court

16

DENIES the DOE's Motion for Summary Judgment on Plaintiffs' retaliation claim against the DOE.

## C.    42 U.S.C. § 1983

During the hearing, the court asked Plaintiffs to clarify what statutory or constitutional violations they are asserting to support their § 1983 claims.  In response, Plaintiffs assert § 1983 claims based on Defendants' violations of the IDEA, the ADA, and Rehabilitation Act.  In other words, Plaintiffs seek § 1983 remedies based upon alleged violations of the IDEA, the ADA, and the Rehabilitation Act.  Based on the following, the court finds that Plaintiffs may not bring a § 1983 claim for any of these violations.

In general, "[a] plaintiff alleging a violation of a federal statute will be permitted to sue under § 1983 unless (1) 'the statute [does] not create enforceable rights, privileges, or immunities within the meaning of § 1983,' or (2) 'Congress has foreclosed such enforcement of the statute in the enactment itself.'"  *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting *Wright v. City of Roanoke Redevelopment & Hous. Auth.*, 479 U.S. 418, 423 (1987) (alteration in original) (footnote omitted)).  Congress' intent to foreclose § 1983 actions for the violation of certain statutes may be implied when "the statutes at issue themselves provide[] for private judicial remedies, thereby evidencing congressional intent to supplant

17

the § 1983 remedy." *Wright*, 479 U.S. at 427.

As to the IDEA, the Ninth Circuit, in *Blanchard v. Morton Sch. Dist.*, 509 F.3d 934, 938 (9th Cir. 2007),"join[ed] the First, Third, Fourth, and Tenth Circuits [by] hold[ing] that the comprehensive enforcement scheme of the IDEA evidences Congress' intent to preclude a § 1983 claim for the violation of rights under the IDEA."

As to the ADA and Rehabilitation Act, Plaintiffs cannot recover under § 1983. "[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 . . . to vindicate rights created by Title II of the ADA or Section 504 of the Rehabilitation Act." *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002). The comprehensive remedial scheme of those acts bar such claims. *Id.* Further, courts addressing this issue have found that "the ADA and Rehabilitation Act provide 'sufficiently comprehensive' remedies for violations of plaintiff's rights," such that a plaintiff is foreclosed from recovering under § 1983 as well. *Bartlett v. N.Y. State Bd. of Law Examiners*, 970 F. Supp. 1094, 1145 (S.D.N.Y. 1997), *aff'd in part and vacated in part on other grounds*, 156 F.3d 321 (2d Cir. 1998), *vacated on other grounds*, 527 U.S. 1031 (1999); *see Chernoff v. City of N.Y.*, 2009 WL 816474, at *5 n.7 (E.D.N.Y. Mar. 26, 2009) (citing *Bartlett*, 970 F. Supp. at 1145); *Credle-Brown v. Conn. Dep't of Children & Families*, 2009 WL 1789430, at *1 (D. Conn. June 24,

18

2009)).

The court therefore GRANTS Defendants' Motion for Summary Judgment on Plaintiffs' § 1983 claims.

## V.  CONCLUSION

Based on the above, the court GRANTS in part and DENIES in part Defendants' Motion for Summary Judgment.  Plaintiffs claims for discrimination and retaliation, pursuant to the ADA and Rehabilitation Act, remain against the DOE.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, November 24, 2009.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Jefferies v. Albert*, Civ. No. 09-00156 JMS/KSC, Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment

19